Collins & Collins L.L.P.
ATTORNEYS AT LAW

By: JOSHUA K. HATCH
　　 JOSEPH E. COLLINS
Arizona Bar # 018289
3241 E. Shea Blvd., Suite 1
Phoenix, Arizona 85028
Telephone No. (602) 788-7227
Facsimile No. (602) 569-6091
jhatch@collinslaw.net
Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| KOOROSH TAHERZADEH, an Individual,<br><br>　　　　Plaintiff,<br><br>v.<br><br>BHVT MOTORS, INC., an Arizona Corporation, d/b/a BELL HONDA, DAVID FENDON and JANE DOE FENDON and the marital community thereof, STEVEN FISHER and JANE DOE FISHER, and the marital community thereof, ROBERT MOTZ and JANE DOE MOTZ and the marital community thereof, JOHN and JANE DOE A, B, C and CORPORATIONS X, Y, Z,<br><br>　　　　Defendants. | Case No.:<br><br>COMPLAINT<br>**(Jury Trial Demanded)** |

COMES NOW, Plaintiff, by and through his attorneys, COLLINS & COLLINS, L.L.P. by JOSHUA K. HATCH, for his cause of action against the Defendants herein, and sets forth as follows:

**A. JURISDICTION**

1.　Jurisdiction is proper pursuant to 28 U.S.C. § 1331 as this is a federal question and pursuant to 42 U.S.C. § 1981, 1983, 1985, 1988 and/or 2000e-2. (Civil Rights)

Page 1 of 9

**B. PARTIES**

2. Plaintiff is domiciled in Maricopa County, State of Arizona and resides at 3032 E. Larkspur, Phoenix, Arizona 85032.

3. Defendant BHVT MOTORS, INC. is an Arizona Corporation, doing business as BELL HONDA, (hereinafter "Bell Honda"), with its principle place of business located at 701 W. Bell Road, Phoenix, Arizona 85023.

4. All Defendant Jane Does are named under community property laws under Arizona State law. Plaintiff will move for leave to amend the Complaint to include actual names if and when they are ascertained. The remaining Defendants are and/or were, at all relevant times in this Complaint, employees for Bell Honda and each residents of the State of Arizona, County of Maricopa.

**C. FACTUAL BACKGROUND**

5. Plaintiff was employed by Defendant Bell Honda as a salesperson. He began his employment on or about April, 2010.

6. Soon after beginning work for Bell Honda, Plaintiff began to be subjected to various racial slurs by the individual Defendants herein, including management. Plaintiff discussed these slurs with his supervisors and other managers of Defendant Bell Honda. Rather than resolve or confront the employees making the racial slurs, the Management of Defendant Honda condoned the actions of the other employees of Defendant Honda and told Plaintiff that he should get used to the comments.

6.1. Each individual Defendant named herein was acting within their respective scope of employment for Defendant Bell Honda and did so while engaging in the behavior set forth herein.

6.2. Numerous employees of Defendant Bell Honda changed the lyrics to several popular songs so that they were directed at Plaintiff, accusing him of being a terrorist because of his Middle

Eastern origin.

7. On one (1) occasion, an employee wrote a vulgar message accusing Plaintiff of being a terrorist because of his middle eastern origin and left it beside the printer in the sales tower of Defendant Bell Honda so that all employees of Defendant Bell Honda could see the racial slurs.

7.1. Plaintiff reported these various actions to both the Human Resources Department of Defendant Bell Honda and to his superiors in management, but neither did anything to stop the discrimination. Defendants MOTZ AND FENDON are the ones who began the changing of lyrics to songs. The vulgar written statements were reported and shown by Plaintiff to Defendants FENDON and FISHER.

7.2. Plaintiff even requested that Defendant Bell Honda compare the handwriting on the note left in the break room to random documents written by other employees to try to determine who had written the message. The management of Defendant Bell Honda advised Plaintiff that it was not a handwriting expert and could not and would not do anything to determine who was discriminating against Plaintiff because of his national origin.

8. On or about July 20, 2010, an employee of Defendant Bell Honda pointed a loaded gun at Plaintiff's head and threatened to kill him because of his national origin which is Middle Eastern and under a claim that Plaintiff is a terrorist which he is not. This incident was reported to Defendant STEVEN FISHER of the Human Resources Department of Defendant Bell Honda, and also to human resources director of operations, Geoff Bunger, but Defendant Bell Honda refused to act to stop the conduct.

9. Plaintiff was forced to use his time as a salesman making telephone calls from contact lists (known as Cold Calls) instead of being allowed to help customers who came to Defendant Bell Honda to look at vehicles with a view toward purchasing them. This limitation was placed on Plaintiff because of his national origin which is middle eastern and under a claim that potential

customers would not purchase from Plaintiff because of the way be looks and because of his accent; Middle Eastern.

9.1. Cold calls are generally non productive and do not lead to many sales while "floor" contacts presents the vast majority of sales by employees such as Plaintiff who were hired to sell Defendant Bell Honda's vehicles.

9.2. As a result of the cold call assignments of Plaintiff rather than floor assignments, Plaintiff was unable to sell as many vehicles as others; floor contacts are the primary source of income for the entire sales staff. Cold calls are used when there is no "floor traffic".

10. Even under these conditions, Plaintiff did make a number of sales, but these sales were assigned to other employees because Plaintiff is of Middle Eastern origin, cutting down on the income of Plaintiff.

11. Supervisory employees of Defendant Bell Honda, yelled, cursed and berated Plaintiff when he was working because of his national origin; this was done even in the presence of customers. One (1) customer even complained to, non-party, Honda Motor Company because of this treatment.

12. After complaining to Human Resources and Management of the racial discrimination, threats and cursing he had endured, Plaintiff was written up for misconduct and eventually terminated which occurred on or about August 16, 2010.

13. On two (2) occasions, an employee of Defendant Bell Honda accused Plaintiff of having a bomb straps because of his Middle Eastern origin. On June 7, 2010, General Sales Manager Defendant ROBERT MOTZ and STEVEN FISHER, forced Plaintiff to sign an interoffice memorandum indicating that it was Plaintiff who made the statements of the bomb straps. Plaintiff attempted to explain the only mention he had ever made was to tell other employees to stop making those statements and telling them he was not a terrorist. Sales Manager Kevin Warner assured Plaintiff that they were just making Plaintiff sign to "save their butts."

14. On a daily basis, the Finance Director would imitate and make fun of Plaintiff's accent and all other employees standing within ear shot would laugh.

15. The allegations of Plaintiff's misconduct were a pretext for Plaintiff's termination in retaliation for his complaints to Human Resources and/or management or was a discriminatory firing on the basis of race, religion or national origin.

## D. COUNT ONE

**I. Plaintiff was retaliated against after engaging in a protected activity as defined by Title VII of the Civil Rights Act.**

16. Pursuant to Title VII of the Civil Rights Act, Plaintiff engaged in a protected activity pursuant to 42 U.S.C. §2000e-3(a), when he, on numerous occasions, notified Human Resources and Management of the racial slurs, cursing and threats he had endured.

16.1. Plaintiff was subjected to an adverse employment action when Defendant Honda wrote him up and ultimately terminated his employment under the pretext of behavioral issues.

16.2. Plaintiff was employed by Defendant Honda for approximately five (5) months, during which time, many slurs and complaints occurred.

16.3. Plaintiff was fired immediately after complaining about this discrimination, clearly establishing a causal link between the protected activity and adverse employment action as required in order to prove his Title VII claim.

17. As a direct and proximate cause of Defendants' conduct, Plaintiff has suffered damages as described below and in an amount to be proven more fully at trial.

\\
\\
\\

### E. COUNT TWO

### I. Intentional Infliction of Emotional Distress

18. Defendants intentionally or recklessly engaged in extreme or outrageous conduct by making racial slurs, singing racial slurs, yelling at, cursing at, pointing a gun at, threatening the life of Plaintiff and then failing to take any action to correct these problems, all of which were actions performed because of Plaintiff's national origin.

19. Defendants' conduct was extreme or outrageous because of the nature of the actions in making racial or ethnic slurs, pointing a gun as Plaintiff's head and failing to take any action to correct or stop this conduct.

20. The actions of Defendant Honda is even more extreme or outrageous because it was occurring and condoned by the supervisors of Defendant Honda.

21. As a direct and proximate cause of Defendants' extreme or outrageous conduct, Plaintiff has suffered severe emotional distress in the form of depression, anxiety, insomnia, loss of employment/wages and loss of enjoyment of life.

22. Plaintiff is entitled to damages because Defendants intentionally or recklessly engaged in outrageous or extreme conduct. Plaintiff has suffered severe emotional distress.

### F. COUNT THREE

### I. Assault

23. On or about July 20, 2010, Kevin Warner, a Manager for Defendant Bell Honda, pointed a loaded gun at Plaintiff's head and threatened to kill him because of his national origin which is middle eastern and under a claim that Plaintiff is a terrorist which he is not. This action caused Plaintiff to have an apprehension of imminent physical harm or unwanted contact, causing Plaintiff damages.

24. Kevin Warner, was at all times herein acting in the course of his employment for defendant Bell Honda. Defendant Bell Honda condoned the actions of its employee by failing to take any action to remedy the problem upon Plaintiff making a complaint.

25. As a result, Defendant Bell Honda is liable to Plaintiff under the theory of *respondeat superior*.

### G. COUNT FOUR

#### I. Wrongful Discharge

26. Defendant Bell Honda fired Plaintiff for alleged bad behavior, which was nothing more than a pretext for a retaliatory or racially motivated firing in violation of public policy established by Arizona common law in <u>Wageseller v. Scottsdale Memorial Hospital</u>, 147 Ariz. 370, 710 P.2d 1025 (1985).

### H. COUNT FIVE

#### I. Breach of the Implied Covenant of Good Faith and Fair Dealing

27. All Defendants have discriminated against Plaintiff based upon race, ethnicity, national origin or religion. Such behavior violates the implied covenant of good faith and fair dealing which is present in all employment contract in the State of Arizona. As such, Defendant Bell Honda is liable to Plaintiff for its behavior in either discriminating against Plaintiff or condoning such behavior.

### I. COUNT SIX

#### I. Hostile and Offensive Work Environment

28. Each Defendant has created a hostile and/or offensive work environment in violation of 42 U.S.C. § 2000e-2 by making the racial slurs, threats, berating comments, taking sales away from Plaintiff and not allowing Plaintiff to sell on the sales floor. Such actions were all unlawful and

intentional because they were based upon Plaintiff's race, ethnicity, national origin or religion

## J. DAMAGES

29.　As a direct and proximate cause of Defendants' conduct, Plaintiff has suffered emotional distress, lost wages, both past and future, and has incurred costs and attorneys' fees in an amount to be proven more fully at trial and for which he now seeks judgment.

30.　Plaintiff is entitled to punitive damages pursuant to 11 U.S.C. § 1981a and pursuant to Arizona law.

## K. RIGHT TO SUE

31.　Plaintiff filed a complaint with the Equal Employment Opportunity Commission (EEOC) within 180 days of the events herein alleged.  The EEOC has issued Plaintiff a right to sue letter.

## L. JURY TRIAL

32.　Plaintiff respectfully requests a trial by jury.

## M. PRIVILEGE

**WHEREFORE**, Plaintiff requests the following relief:

1.　Compensatory damages for emotional distress and past and future lost wages;
2.　Loss of benefits and retirement;
3.　Out of pocket costs;
4.　Punitive damages;
5.　Costs and attorney's fees;

\\

\\

6. Any other relief the Court deems just and appropriate.

DATED this the 21 day of January, 2011.

                                           /s/Joshua K. Hatch
                                           JOSHUA K. HATCH
                                           Attorney for Complainant

### **VERIFICATION**

STATE OF ARIZONA     )
                            )ss.
County of Maricopa      )

    I, KOOROSH TAHERZADEH, am the Plaintiff in this matter. I have read the facts and averments contained in this Complaint and affirm that they are true and correct to the best of my information and belief.

                                           _____
                                           KOOROSH TAHERZADEH
                                           Plaintiff

    SUBSCRIBED AND SWORN to before me on this the 10 day of January, 2011, by KOOROSH TAHERZADEH.

                                           _____
                                           Notary Public

My Commission Expires:

11-28-2011

STEPHANIE KULSETH
Notary Public - Arizona
Maricopa County
Expires 11/28/2011

Page 9 of 9